UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD LACY,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No.  EDCV 04-1376-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On November 11, 2004, Clifford Lacy ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits. On December 6, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on May 2, 2005, defendant filed an Answer to Complaint. On August 10, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On July 25, 2001, plaintiff filed an application for Supplemental Security Income payments. (Administrative Record ["AR"] at 106-08). Plaintiff alleged that beginning on May 11, 2001, he was unable to work because he suffered from pain in his left shoulder and lower back. (AR at 130). The Commissioner denied plaintiff's application for benefits, initially, and upon review. (AR at 62, 63, 66-69, 72-76).

On or about April 16, 2002, plaintiff filed a second application for Supplemental Security Income payments. (AR at 109-111). Plaintiff alleged that beginning on January 10, 2001, he was unable to work because he suffered from the following impairments: shoulder "locks up," lower back pain, "L-4, L-5 are messed up," and middle and upper back pain. (AR at 152). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 64, 65, 77-80, 83-86).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 87). On October 6, 2003, the ALJ conducted a hearing in San Bernardino, California. (AR at 28-61). Plaintiff appeared at the hearing with his counsel and testified. (AR at 31-37, 42-43, 54-57). Joseph Jensen, M.D., a medical expert, appeared and testified. (AR at 37-41, 46-54, 57-59). Corinne Porter, a vocational expert, also appeared and testified. (AR at 41-42, 43-46, 59-60).

On February 10, 2004, the ALJ issued her decision denying benefits. (AR at 18-27). In her decision, the ALJ concluded that plaintiff suffered from the following severe impairments: low back pain secondary to lower lumbar discogenic disease with some S1

radiculopathy on the left, neck pain secondary to cervical strain, and left shoulder tendonitis, status post decompression surgery. (AR at 26). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ also found that plaintiff's complaints of totally disabling limitations were not fully credible. (AR at 23-24). The ALJ concluded that plaintiff retained the residual functional capacity to perform a significant range of light work. (AR at 25). Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. (AR at 26).

Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 11). On September 20, 2004, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.  The ALJ failed to give proper weight to the opinion of plaintiff's treating physician.

2.  The ALJ failed to sufficiently analyze and consider the testimony of plaintiff regarding issues of symptomatology and the side effects of his medication.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence

1 means "more than a mere scintilla" but less than a preponderance.
2 Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.
3 Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.
4 1988).

5   Substantial evidence is "such relevant evidence as a reasonable
6 mind might accept as adequate to support a conclusion." Richardson,
7 402 U.S. at 401. This Court must review the record as a whole and
8 consider adverse as well as supporting evidence. Green v. Heckler,
9 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible
10 of more than one rational interpretation, the ALJ's decision must be
11 upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

   The Commissioner has established a five-step sequential process
for determining whether a claimant is disabled. 20 C.F.R. §§
404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42
(1987). At step one, disability benefits are denied if the
Commissioner determines that the claimant is engaged in substantial
gainful activity. Id. at 140. At step two, the Commissioner
evaluates whether the claimant has a medically severe impairment which
significantly limits his physical or mental ability to do basic work
activities. Id. at 140-41. Step three requires a consideration of
whether the claimant's impairment is equivalent to one of a number of
listed impairments that are so severe as to preclude substantial
gainful activity. Id. at 141. If the impediment meets or equals one
of the listed impairments, the claimant is presumptively disabled.
Id. If the impairment is not one that is conclusively presumed to be

4

disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Bowen, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.   Treating Physician's Opinion**

Plaintiff asserts that the ALJ failed to give proper consideration to the opinion of plaintiff's treating physician, Catalino Dureza, M.D. Dr. Dureza remarked that plaintiff needed to lie down one or two times per day for one to two hours each time due to fatigue. (AR at 473). Plaintiff argues that the ALJ's failure to address this functional limitation was error.

On August 20, 2003, Dr. Dureza, plaintiff's treating neurologist, completed a Physical Capacities Evaluation on plaintiff. (Id.). In addition to assessing the limitations requiring plaintiff to lie down, Dr. Dureza also determined that plaintiff could sit, stand, and walk for only one hour at a time for a total of one hour during an eight-hour workday. (Id.). Dr. Dureza also limited plaintiff to carrying or lifting up to a maximum of ten pounds occasionally. (Id.).

The ALJ gave limited weight to Dr. Dureza's assessment on the grounds that Dr. Dureza's limitations were not consistent with the conservative treatment he rendered. Dr. Dureza failed to cite clinical or laboratory findings consistent with the assessed limitations, and plaintiff's own statements contradicted Dr. Dureza's stated limitations. (AR at 24). The ALJ further opined that Dr.

Dureza completed the evaluation solely to assist plaintiff in obtaining disability benefits. (AR at 24). Instead, the ALJ assigned the greatest weight to the opinion of a medical expert, Joseph Jensen, M.D., who opined that plaintiff's impairments did not meet or equal a listing and that plaintiff could complete an eight-hour workday and forty-hour workweek. (AR at 24, 39-41). Plaintiff claims that the ALJ failed to properly consider Dr. Dureza's opinion and improperly alleged that Dr. Dureza was biased in favor of plaintiff.

### 1. Conservative Medical Treatment

The ALJ rejected Dr. Dureza's opinion in favor of Dr. Jensen, in part, because "the extreme limitations described by Dr. Dureza, in particular, an ability to sit, stand or walk for more than 1 hour each during an entire 8-hour day, are not consistent with the conservative treatment rendered." (AR at 24). As discussed below, substantial evidence does not support the ALJ's determination.

An ALJ should afford less weight to a non-examining physician's opinion than to a treating physician's opinion. See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician."). Standing alone, a non-examining physician's opinion cannot constitute substantial evidence to reject a treating physician's opinion. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.") (emphasis in original). In order to reject the testimony of a treating physician in favor of a non-examining physician, the ALJ must give specific, legitimate reasons

6

1  that are supported by substantial evidence in the record. <u>Lester</u>, 81
2  F.3d at 831 (quoting <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir.
3  1995)). Furthermore, "where the opinion of the claimant's treating
4  physician is contradicted, and the opinion of a nontreating source is
5  based on independent clinical findings that differ from those of the
6  treating physician, the opinion may itself be substantial evidence; it
7  is then solely the province of the ALJ to resolve the conflict."
8  <u>Andrews</u>, 53 F.3d at 1041.

9  Here, plaintiff submitted five Neurosurgical Evaluations from Dr.
10 Duerza. (AR at 443-45, 475-77, 482-84, 486-88, 496-503). In his
11 December 18, 2002 evaluation, Dr. Duerza recommended that plaintiff
12 continue with his medications, which included Vioxx,[1] continue with
13 chiropractic care and physical therapy three times a week, and follow
14 up in four to six weeks. (AR at 501). Dr. Duerza specifically noted,
15 "At this time, we feel it necessary to treat this patient
16 conservatively with physical therapy and chiropractic care three times
17 a week for the next six weeks." (<u>Id.</u>). On January 22, 2003, Dr.
18 Duerza recommended that plaintiff continue his physical therapy three
19 times a week, continue with his medications, consisting of Darvocet-N

---

[1] Vioxx is a "nonsteroidal anti-inflammatory drug (NSAID), specifically a COX-2 inhibitor, which relieves pain and swelling (inflammation). It is used to treat arthritis, acute pain, acute migraine attacks (with or without aura), and menstrual pain and discomfort." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Vioxx"; follow "Vioxx Oral" hyperlink; then follow "Rofecoxib – Oral" hyperlink). Vioxx is a brand name of the medication Rofecoxib.

1   100 mg[2], Soma[3], Naprosyn[4], and Zantac,[5] and return for a follow up
2   evaluation in four to six weeks. (AR at 487). In his February 19,
3   2003 evaluation, Dr. Duerza opined that plaintiff did not require
4   medication, he should continue with physical therapy, and he should
5   follow up in four weeks. (AR at 444). On April 9, 2003, Dr. Duerza
6   recommended that plaintiff continue on his medications, which were not
7   listed, continue with physical therapy, and follow up with the doctor
8   in four weeks. (AR at 483). Dr. Duerza also noted that plaintiff had
9   been seen by a physician specifically for pain management. (Id.). In
10  his July 23, 2003 evaluation, Dr. Duerza noted that plaintiff required
11  medication and recommended that he continue with physical therapy.
12  (AR at 476). In each of the five evaluations, Dr. Duerza opined that

---

[2] Darvocet-N is a "combination of a narcotic (propoxyphene) and a non-narcotic (acetaminophen). It is used to treat mild to moderate pain." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Darvocet-N"; then follow "Darvocet-N 100 Oral" hyperlink).

[3] Soma is a "combination of a narcotic (propoxyphene) and a non-narcotic (acetaminophen). It is used to treat mild to moderate pain." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Soma"; then follow "Soma Oral" hyperlink).

[4] Naprosyn is a "nonsteroidal anti-inflammatory drug (NSAID), which relieves pain and swelling (inflammation). It is used to treat headaches, muscle aches, backaches, tendonitis, bursitis, dental pain, menstrual cramps, arthritis, or gout." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Naprosyn"; follow "Naprosyn Oral" hyperlink; then follow "Naproxen – Oral" hyperlink). Naprosyn is a brand name of the medication Naproxen.

[5] Zantac "reduces the amount of acid in your stomach. It is used to treat and prevent ulcers, to treat gastroesophageal reflux disorder (GERD), and to treat conditions associated with excessive acid secretion." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zantac"; follow "Zantac Oral" hyperlink; then follow "Ranitidine Tablets - Oral" hyperlink). Zantac is a brand name of the medication Ranitidine.

plaintiff was temporarily totally disabled and recommended that he return for a follow up evaluation within a time span of no less than a six weeks.  (AR at 444, 476, 483, 487, 502).

Dr. Jensen's assessment that plaintiff could work an eight-hour day and a 40-hour work week conflicts with Dr. Duerza's assessment, who opined that plaintiff needed to lie down regularly.  Dr. Jensen never examined the plaintiff; as such, his opinion is not based on independent clinical findings.  In order to reject the treating physician's assessment in favor of a non-examining physician, as the ALJ has done, the ALJ is required to provide specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 831.  Here, Dr. Duerza closely monitored plaintiff's treatment and required frequent follow up visits.  He also recommended that plaintiff continue on his medications and attend multiple physical therapy treatments per week.  The treatment plan that Dr. Duerza imposed cannot be characterized as so conservative as to be inconsistent with his assessed limitations.  Dr. Duerza prescribed frequent therapy sessions and follow up evaluations, as well as strong medications. Accordingly, the Court is not persuaded that the nature of Dr. Duerza's treatment of plaintiff was a legitimate reason for giving limited weight to Dr. Duerza's opinion.  As such, substantial evidence does not exist to support the ALJ's decision.

**2.   Lack of Objective Clinical Findings**

The ALJ also gave limited weight to Dr. Duerza's opinion based upon the alleged lack of clinical or laboratory findings that were consistent with the degree of limitations Dr. Duerza assessed.  (AR at 24).  The Ninth Circuit permits an ALJ to rely on an absence of

objective findings to reject a treating physician's opinion. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); <u>Buckhart v. Bowen</u>, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings); <u>cf.</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988) (improper to reject treating physician's opinion where he provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions).

Nevertheless, an ALJ may not reject a treating physician's opinion for lacking supporting clinical data or explanation without first re-contacting the physician to determine whether such supporting clinical data exists. In particular, 20 C.F.R. 404.1512(e)(1), in pertinent part, states:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, <u>the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques</u>.

20 C.F.R. 404.1512(e)(1) (emphasis added). Thus, unless an ALJ complies with his duty to re-contact the treating physician, an ALJ

10

cannot validly cite a lack of clinical data or explanation to reject the treating physician's opinion. See Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-contact treating physician before rejecting opinion and stating, "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, sua sponte, to develop the record further by contacting the treating physician to determine whether the required information is available"); see also Corey v. Barnhart, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002) ("The ALJ discredited Dr. Ciulla's opinion because of the lack of objective findings, and there is no indication in the record that the ALJ recontacted Dr. Ciulla to find out whether he had any findings or other information to support his opinion. The ALJ's failure to do so was error.").

Here, the ALJ erred in citing a lack of clinical and laboratory findings to reject Dr. Duerza's opinions for two reasons. First, the ALJ rejected Dr. Duerza's opinion without first re-contacting him to determine whether, in fact, clinical data existed to support his opinion. Second, the medical findings in the record do not contradict Dr. Duerza's assessments and arguably lend support to them. For instance, Francis Gerard D'Ambrosio, M.D., plaintiff's treating physician and orthopedic surgeon, operated on plaintiff for the following procedures: left shoulder manipulation, arthroscopy, and subacromial decompression. (AR at 304-05). In his most recent evaluation on November 4, 2002, D'Ambriosio diagnosed plaintiff with musculoligamentous injury cervical spine, cervical radiulopathy, musculoligamentous injury lumbar spine, sciata, and left shoulder

impingement syndrome, status post arthoscropic subacromial decompression. (AR at 362). While examining plaintiff, he also noted limited motion in plaintiff's cervical spine and lumbar spine, as well as tenderness to palpatation about the anterolateral aspect of the acriomion process. (Id.). Moreover, Gregory A. Smith, M.D., a specialist in pain management, considered giving plaintiff lumbar epidural steroid injections if his pain did not subside.[6] (AR at 584). Finally, plaintiff's chiropractor, Robb Russell, D.C., diagnosed plaintiff with lumbar invertebral disk syndrome, left lower extremity radiculitis, joint dysfunction in the lumbosacral region, and left shoulder strain. (AR at 259). Thus, to the extent the ALJ rejected Dr. Duerza's assessments for lack of clinical or laboratory evidence, the objective findings in the record were not clearly inconsistent with Dr. Duerza's assessed limitations.

Accordingly, the ALJ erred in citing to a lack of supporting objective evidence to give limited weight to Dr. Duerza's conclusions about plaintiff's physical limitations.

**3. Assessment Contradicted by Plaintiff**

The ALJ further determined that the limitations assessed by Dr. Dureza were contradicted by plaintiff himself. While Dr. Duerza limited plaintiff's ability to sit, stand, or walk to one hour in an eight-hour workday, the ALJ claims that plaintiff testified that his tolerances for sitting, standing, or walking exceeded those limitations. (AR at 24).

The ALJ specifically noted that plaintiff reported he could sit

---

[6] Dr. Duerza later reported, "It was found that [plaintiff] would not benefit from epidurals but [Dr. Smith] continued to give [plaintiff] a variety of medications." (AR at 483).

12

for an hour and a half at one time and shop for two hours at one time. (Id.). On June 28, 2003, plaintiff reported in an Exertional Daily Activities Questionnaire that he could sit for "about one to one and half hours before my back starts to really bother me." (AR at 199). In the same questionnaire, plaintiff wrote, "With the help of my wife[,] we go [grocery shopping] twice a month[. I]t takes about two hours to do what little shopping we do." (AR at 199). The ALJ reasonably presumed that grocery shopping involves walking and standing, which Dr. Duerza opined that plaintiff was limited to just one hour in an eight-hour day. (AR at 24).

Although plaintiff's self-reported activities exceed the limitations assessed by Dr. Duerza, the relatively slight inconsistency between the limitations does not constitute substantial evidence to disregard Dr. Duerza's assessment. First, plaintiff's self-reported ability to sit for up to one hour and a half exceeds Dr. Duerza's assessment by a half hour. Such excess is minimal. Second, the form that Dr. Duerza filled out allowed him to circle the number of hours that plaintiff could engage in a particular activity in whole numbers only. Thus, if Dr. Duerza circled two hours, which was the next higher number, his assessment would then exceed plaintiff's ability. Furthermore, Plaintiff's ability to grocery shop, which presumably includes walking and standing, exceeds Dr. Duerza's limitations on standing and walking by one hour. Plaintiff reported that it takes him and his wife two hours to do a "little shopping." (AR at 198). One could infer that plaintiff takes frequent breaks during the shopping trip since the time span of two hours does not appear commensurate with the activity performed, that is, a "little shopping." Thus, Dr. Duerza's assessment that plaintiff can stand or

walk for only one hour at a time may still be accurate or only minimally in excess. Given this possibility, the Court believes that substantial evidence does not exist to limit the evidentiary value of Dr. Duerza's opinion on this basis alone.

**4.   Bias of the Treating Physician**

Finally, the ALJ found that Dr. Duerza assessed significant functional limitations on plaintiff "in an apparent attempt to assist [plaintiff] in obtaining disability benefits." (AR at 24). "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (purpose for which medical report is obtained is not legitimate basis for rejecting it as report procured by claimant is entitled to no less weight than report procured by Commissioner: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits") (quotation omitted); cf. Saelee, 94 F.3d at 522-23 (rejecting treating physician's opinion that was created at request of claimant because doctor's opinion letter varied from his treatment notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits"). Although an ALJ may consider the purpose for which an opinion was solicited, he cannot rely solely upon the purpose behind the opinion to reject the opinion. Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) ("Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report.") Reddick v. Chater, 157 F.3d 726 (1998).

14

Here, the ALJ erred in citing the purpose for which Dr. Duerza rendered his opinion in rejecting that opinion. Unlike <u>Saelee</u>, nothing in the record suggests that Dr. Dureza ambiguously worded his opinion to assist plaintiff. Nor does the ALJ cite any instance or evidence indicating as much. Dr. Duerza's functional assessments, moreover, comport with his five Neurological Evaluations, all of which opine that plaintiff is temporarily totally disabled. No evidence exists in the record to support the ALJ's contention that Dr. Dureza completed the physical capacities assessment form in an attempt to assist plaintiff in obtaining benefits, nor the ALJ cite any. As such, the ALJ's reference to Dr. Duerza's motivation in completing his assessment on plaintiff's functional limitations does not constitute grounds for giving limited weight to his opinion.

**C. Remand is Required to Remedy the Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully. <u>McAlister</u>, 888 F.2d at 603; <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, <u>see Schneider v. Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt

of benefits. See Smolen, 80 F.3d at 1292.

Here, the Court finds remand appropriate. The reasons cited by the ALJ in support of limiting the weight of the treating physician's opinion are insufficient. On remand, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to support his decision to give little weight to the limitations assessed by the treating physician.[7]

### ORDER

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: December 15, 2005

                                        /s/
                              JENNIFER T. LUM
                              UNITED STATES MAGISTRATE JUDGE

---

[7] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to sufficiently analyze and consider the testimony of plaintiff regarding issues of symptomatology and the side effects of his medication. As explained above, however, the ALJ's errors in giving little weight to Dr. Duerza's assessment constitute sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.